UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA PAVIC, D.O.,

    Plaintiff,

v.                                               CASE NO. 8:13-CV-2578-17EAJ

LASER SPINE INSTITUTE, LLC and
CRAIG R. WOLFF, M.D.,

    Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendant Laser Spine Institute LLC's and Craig Wolfe, M.D.'s Motion for Partial Summary Judgment, filed September 15, 2014 (Dkt. # 32), to which Plaintiff Sandra Pavic, D.O. has responded in opposition (Dkt. # 41). In addition, Defendants filed a statement of undisputed facts (Dkt. # 47), and Plaintiff filed a statement of disputed facts (Dkt. # 46). For the reasons that follow, Defendants' motion is denied.

## PROCEDURAL HISTORY

In this medical-negligence action, Plaintiff alleges that Defendant Laser Spine Institute, LLC ("Laser Spine Institute") markets itself as a provider of minimally-invasive outpatient surgical procedures, but overstates the benefits these procedures, which only temporarily treat symptoms. In Count I, Plaintiff claims that Defendant Craig R. Wolff, M.D. ("Dr. Wolff") performed a back surgery that was not medically indicated and was beneath the applicable standard of care, and that he did so for financial gain. In Count II, Plaintiff claims that Laser Spine Institute is directly or vicariously liable for Dr. Wolff's conduct.

Plaintiff seeks compensatory and punitive damages. (Dkt. #1). The Court previously denied Defendants' motion to dismiss and Defendants' alternative motion to strike. (Dkt. # 21).

Defendants now move for partial summary judgment on two issues. First, Defendants argue that the complaint fails to state any claim for misleading advertising or fraudulent inducement, and that Plaintiff's allegations regarding advertising are superfluous and should be dismissed. Second, Defendants move for summary judgment on Plaintiff's punitive damages claim. In response to Defendants' motion, Plaintiff contests only the availability of punitive damages; Plaintiff does not contend that she is pursuing a claim for misleading advertising or fraudulent inducement. (Dkt. # 41, p. 17 n.6).

This Court previously held that Plaintiff is not attempting to plead a fraud claim. (Dkt. # 21, p. 6). This Court also previously denied Defendants' motion to strike Plaintiff's allegations regarding Laser Spine Institute's advertising practices—the same allegations Defendants challenge in the instant motion. (Dkt. # 21, pp. 7-8). Defendants' partial motion for summary judgment suggests an attempt to revisit those rulings, and the motion is **DENIED**. The remaining discussion pertains only to Plaintiff's claim for punitive damages.

## FACTUAL BACKGROUND

On August 31, 2011, Dr. Wolff performed back surgery on Plaintiff, involving destruction by thermal ablation of the paravertebral facet joint nerves at L3-4 and L4-5, as well as a lumbar laminotomy and foraminotomy, including partial facetectomy with decompression of the nerve roots, at L4-5. (Dkt. # 42-2, p.1; Dkt. # 1, ¶ 7). At the time of

the surgery, Dr. Wolff was an employee of Laser Spine Institute. (Dkt. # 47, ¶ 5).

Dr. Wolff believed that the surgery was indicated for a number of reasons. First, at the time Plaintiff presented to Laser Spine Institute, she had failed conservative treatment. In addition, a lumbar MRI, taken the day prior to Plaintiff's surgery, revealed facet disease at L4-5 as well as lateral recess stenosis. Further, the Plaintiff had "a very positive result" to a selective nerve block at L4-5, also performed on August 30, 2011. As a result, Dr. Wolff concluded that the pain generator was the L4-5 area, and that the best chance to alleviate Plaintiff's symptoms would be decompressing the lateral recess at L4-5. (Dkt. # 36-1, pp. 118-121). At the time, Plaintiff, who is a family practice physician, also believed that surgery was indicated. (Dkt. # 35-1, pp. 168-69).

By letter dated February 14, 2012, Plaintiff's health insurance carrier denied Plaintiff's claims for the surgery. The letter cited the opinion of a board-certified orthopedic surgeon, as follows:

> The services provided are not considered standard of care for the patient's condition. Records provided for this review indicate that the patient has undergone selective nerve root blocks and she should be given time to demonstrate the efficacy of that block prior to going to other procedures. The selective nerve root block was performed on 08/30/2011 and the patient was taken back to surgery on 08/31/2011. Furthermore, the procedure performed on 08/31/2011, including destruction of the facet joints by ablation with lumbar laminotomy and foraminotomy and decompression of the nerve roots on the right at L4-5 is not considered reasonable or necessary. The medical records submitted, including the MRI of 8/30/2011, do not demonstrate significant facet joint arthropathy. Records did not demonstrate significant foraminal stenosis or impingement of the nerve roots. Medical records do not demonstrate conservative care going before surgery. All these are recommended per peer-reviewed literature. As such, the services provided are not considered standard of care for this patient's condition.

(Dkt. # 41-2, pp. 1-2). The lumbar MRI referenced in this letter was initially interpreted by Shannon Calhoun, D.O., who noted largely minor or mild degenerative changes to the

3

lumbar spine. At the L4-5 level—which Dr. Wolff identified as the probable pain generator—those changes included mild facet arthropathy, minor central canal narrowing, and no significant foraminal stenosis. (Dkt. # 41-1, pp.1-2).

In connection with this litigation, Plaintiff and Defendants retained medical experts. Plaintiff's expert, Kalman Blumberg, M.D., who is a board-certified orthopedic surgeon, concluded:

> It is my opinion that the surgery performed on August 31, 2011 by Craig R. Wolff, M.D. was not medically indicated because Dr. Pavic's presentation, including her history, diagnostic test results, and imaging studies made plain that the procedures performed by Dr. Wolff at Laser Spine Institute would not address her pathology, and would unnecessarily expose her to injury and damages by traumatizing the spine and adjacent structures. As a result of this negligent care, Dr. Pavic suffered emotional trauma and permanent, debilitating physical injury; including arachnoiditis and chronic pain.
>
> Laser Spine Institute is engaged in willful mistreatment or substandard treatment of patients like Dr. Pavic. The business model it employs necessarily results in cases like this one, and I have seen many other patients of LSI who suffered similar, avoidable outcomes as a result.

(Dkt. # 42-2, p. 2) In a supplemental affidavit, Dr. Blumberg further opined:

> Sandra Pavic received outrageously deficient care, undergoing the wrong operation, with no follow up and no followup plan. The lack of followup is built into the system at Laser Spine Institute, where out of state patients are targeted, temporarily "fixed" with anesthetizing procedures, and shipped off to their distant points of origin to be dealt with by an ER physician or family practice doctor or someone else.
>
> Laser Spine Institute and Dr. Wolff knew or should have known that their conduct and their business plan was reckless, and amounted to deliberate endangerment of the life and safety of patients like Sandra Pavic. Dr. Pavic was injured by such conduct and these injuries are permanent and continuing.

(Dkt. # 42-3, ¶¶ 5-6).

During his deposition, Dr. Wolff was questioned as to his plan for Plaintiff's follow-up

care. Dr. Wolff did not testify that he had a follow-up plan specific to Plaintiff, but he testified that Laser Spine Institute has "very specific plans." For instance, if a patient experienced post-surgical pain, the patient could be assessed by a nurse over the telephone. Dr. Wolff conceded that a telephone assessment was not "the best thing," and stated:

> I've always talked to patients and said, "Come in." They say, "Well, I'm in Michigan." Then I'm like, "Well, why are you in Michigan? I mean, you had surgery, you're in Michigan, and now you want me to tell you what's wrong? How am I going to do that over the phone?" So I would hope that people wouldn't go home if they were having pain.

Dr. Wolff also testified that he did not have privileges in any area hospital, should any of his patients need hospital care. (Dkt. #36-1, pp. 165-70).

In response, Defendants present the testimony of their own expert, James B. Macon, M.D., a board-certified neurosurgeon, who specializes in spine surgery and pain procedures. As to Plaintiff's surgery, he opined:

> Pre-operative assessment of her complaints, physical and detailed neurological exam, lumbar MR scan and a positive response (85% pain reduction with anesthetic injection) to the right L4-5 selective nerve root block confirmed that she was an appropriate candidate for the treatments performed by Dr. Wolff on 8/31/2011 at LSI. It is reasonable that Dr. Wolff thought preoperatively that the L4-5 area was the potential pain generator, that he could help her and that the surgery was medically indicated.
>
> . . . .
>
> It is my opinion that the care given to Sandra Pavic as treatment for chronic back and lumbar radicular pain by Dr. Wolff and Laser Spine Institute, to a reasonable degree of medical probability, was appropriate and medically necessary consistent with the standard of care as recognized by reasonable prudent spine surgeons practicing under similar circumstances. In addition, there is absolutely no objective evidence that Ms. Pavic was neurologically injured by the care provided in 2011 by Dr. Wolff or the Laser Spine Institute, despite the persistence of her complaints following treatment.

(Dkt. # 34-1, pp. 5-6, 11-12).

5

## **LEGAL STANDARD**

Summary judgment is appropriate if the pleadings, discovery, disclosure materials on file, and any affidavits demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 246. However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50.

## **ANALYSIS**

### A. Punitive Damages

In this diversity action, the Court applies the substantive law of Florida, the forum state. Tech. Coating Apps., Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). "Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." Owens-Corning Fiberglas Corp. v. Ballard,

6

749 So. 2d 483, 486 (Fla. 1999). The imposition of punitive damages is governed by Section 768.72 of the Florida Statutes, which permits punitive damages "only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Fla. Stat. § 768.72(2); Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1220 (11th Cir. 2010). Florida courts describe "clear and convincing evidence" as an "intermediate burden of proof," which:

> requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

S. Fla. Water Mgm't Dist. v. RLI Live Oak, LLC, 139 So. 3d 869, 872 (Fla. 2014); Owens-Corning Fiberglas Corp., 749 So. 2d at 486 n.4. A court may grant summary judgment on an unsupported claim for punitive damages. Taylor v. Gunter Trucking Co., Inc., 520 So. 2d 624, 624 (Fla. 1st DCA 1988); cf. Mee, 608 F.3d at 1221 (affirming district court's grant of Rule 50(a) motion).

Section 768.72 specifically defines both intentional misconduct and gross negligence. Intentional misconduct requires "actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result." Fla. Stat. § 768.72(2)(a). Gross negligence is defined as conduct that is "so reckless or wanting in care that it constituted a conscience disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Fla. Stat. § 768.72(2)(b). In the case of an employer, punitive damages may be imposed based on an employee's conduct only if the employee's conduct evinces intentional misconduct or gross negligence, and the employer:

(1) actively and knowingly participated in the conduct; (2) condoned, ratified, or consented to the conduct; or (3) engaged in grossly negligence conduct. Fla. Stat. § 768.72(3).

Defendants maintain that Plaintiff cannot present the requisite "clear and convincing evidence" of intentional misconduct or gross negligence by Dr. Wolff. In particular, Defendants argue that there is no evidence that Dr. Wolff had actual knowledge of any wrongful conduct, given his detailed explanation as to the indications for surgery. In addition, Defendants maintain that Plaintiff is unable to prove gross negligence because Dr. Macon has opined that the surgery was appropriate and medically necessary, and Plaintiff, herself, testified that she thought the surgery was indicated. Defendants further assert that, because the Plaintiff is unable to prove the requisite culpability on the part of Dr. Wolff, she is unable to prevail as to Laser Spine Institute.

In response, Plaintiff relies heavily on the opinion of her own expert, Dr. Blumberg. Plaintiff also cites the denial of her health insurance claim, and the August 30, 2011 MRI results, which Dr. Calhoun interpreted as showing minor or mild degenerative changes.[1] Finally, Plaintiff maintains that there is sufficient evidence that Laser Spine Institute participated in and ratified Dr. Wolff's conduct.

Taking the requisite inferences in Plaintiff's favor, the Court finds that Plaintiff has identified sufficient evidence to create a triable issue of fact as to whether Dr. Wolff engaged in conduct that constituted a "conscious disregard or indifference to the life, safety, or rights" of Plaintiff. That evidence includes Dr. Blumberg's opinion that Plaintiff underwent the wrong surgery, that there was no follow-up plan, and that she received

---

[1] Defendants do not raise any objection to the admissibility of this evidence. See Fed. R. Civ. P. 56(c)(2).

outrageously deficient care. See Payton Health Care Facilities, Inc. v. Estate of Campbell, 497 So. 2d 1233, 1240 (Fla 2d DCA 1986) (holding that the testimony of a qualified expert was sufficient to sustain an award of punitive damages). Dr. Blumberg's opinion is generally consistent with the August 30, 2011 lumbar MRI results, the denial letter from Plaintiff's health insurance carrier, and Dr. Wolff's failure, during his deposition testimony, to identify a specific follow-up plan for Plaintiff.

Although Dr. Macon provides a conflicting opinion, that conflict is not for this Court to resolve at this stage of the litigation. Likewise, Plaintiff's own opinion that she believed surgery was indicated is minimally probative—she is not a specialist, and she testified that her decision to proceed with the surgery may have been clouded by a desire to achieve pain relief. (Dkt. # 35-1, pp. 131-32). Defendants' motion is therefore **DENIED** as to the punitive damages claim against Dr. Wolff.

As to Laser Spine Institute, Plaintiff produces limited evidence regarding the company's culpability, instead asserting that her ability to obtain evidence has been hindered by the Magistrate Judge's discovery rulings. (Dkt. 41, p. 14 n.5; Dkt. 46, ¶ 5). Notably, however, Plaintiff fails to provide an affidavit or declaration stating why she is unable to present evidence in opposition to the summary judgment motion, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.[2] Although Plaintiff requested an extension of time to respond to the summary judgment motion, she did not base that request on the need to conduct additional discovery. (Dkt. # 38). Moreover, Plaintiff has

---

[2] Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

not appealed the Magistrate Judge's discovery rulings to this Court. Accordingly, the Court finds no reason to delay consideration of Defendants' motion for summary judgment as it pertains to Laser Spine Institute.

Nonetheless, Defendants have failed to discharge their burden, as the moving parties, on Plaintiff's punitive damages claim against Laser Spine Institute. In two sentences, Defendants conclusorily state that Laser Spine Institute is not liable for punitive damages because Plaintiff failed to demonstrate Dr. Wolff's culpability, and there is no evidence that Laser Spine Institute "directly" caused harm to Plaintiff. (Dkt. # 32, p. 21). As discussed above, however, there is a factual issue as to Dr. Wolff's culpability. And Defendants wholly fail to address the statutory grounds for imposition of punitive damages against a corporate entity: participation, ratification, and grossly negligent conduct. See Fla. Stat. § 768.72(3)(a)-(c).

The Court is mindful that the burden on the party moving for summary judgment "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325; see also Fed. R. Civ. P. 56(c)(1). Defendants' failure to address the statutory grounds for imposition of punitive damages against a corporate entity does not satisfy that burden. Defendants' motion is therefore **DENIED** as to the punitive damages claim against Laser Spine Institute.

## B. Dr. Macon's Qualifications

In her response in opposition to the motion for summary judgment, Plaintiff briefly challenges the qualifications of Defendants' expert, Dr. Macon, under Fla. Stat.

§ 766.102(5),[3] on the ground that he is a neurosurgeon rather than orthopedic surgeon (Dkt. # 41, p. 6 n.3). The Court need not resolve the issue for purposes of this motion, as Plaintiff prevails even with consideration of Dr. Macon's testimony. The Court does note, however, that Plaintiff appears to be relying on the current version of Section 766.102, which became effective on July 1, 2013. That section provides, in relevant part, that an expert must "specialize in the <u>same</u> speciality as the health care provider against whom or on whose behalf the testimony is offered." Fla. Stat. § 766.102(5)(a)1. (2013) (emphasis added). However, the prior version of the statute also allowed testimony from an expert who specializes "in a <u>similar</u> specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim[.]" Fla. Stat. § 766.102(5)(a)1. (2011) (emphasis added). To the extent that Plaintiff wishes to assert a challenge to Dr. Macon's qualifications, she is directed to do so in a fully-briefed motion, with citation to relevant and controlling authority.

Based on the foregoing, it is **ORDERED** that Defendants' Motion for Partial Summary Judgment (Dkt. # 32) is **DENIED**.

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this 10th day of November, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record

---

[3] Section 766.102(5) specifies the standards for expert witnesses in medical-negligence actions, which apply in this diversity action. Fed. R. Evid. 601; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1295-96 (11th Cir. 2004).

11